# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIA C. TORRES,

      Plaintiff,

v.                                                                      CIV 20-0683 KBM

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 24*), filed on February 26, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3*; *6*; *7*. Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    **Procedural History**

Ms. Maria C. Torres (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on January 5, 2017. Administrative Record[1] (AR) at AR 225-28. She alleged a disability onset date of December 29, 2016. *See* AR at 225.

---

[1] Document 19-1 comprises the sealed Administrative Record. *See Doc. 19-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 98-110) and on reconsideration (AR at 111-24). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 136-37. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 65-97. ALJ Eric Weiss issued an unfavorable decision on May 20, 2019. AR at 14-36. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 221-24), which the council denied on May 12, 2020 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to

perform her past relevant work (PRW). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Weiss found that Plaintiff "has not engaged in substantial gainful activity since" her alleged onset date. AR at 17 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: cervical spine facet arthrosis, lumbar spondylolisthesis, fibromyalgia, bilateral hip trochanteric bursitis and early degenerative changes and bilateral hand osteoarthritis." AR at 17 (citing 20 C.F.R. § 404.1520(c)). ALJ Weiss also noted that there is "medical evidence of obesity, hypertension, hyperlipidemia, plantar fasciitis, undifferentiated connective tissue disease, keratoconjunctivitis sicca, eye pseudoexfoliation, bilateral age related nuclear cataract, ankle mild osteoarthritic degenerative changes, osteopenia, bilateral carpal tunnel syndrome, hematuria and

---

[2] ALJ Weiss first found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2019." AR at 17.

depression." AR at 18. Her obesity does not, however, "meet the requirements of SSR 02-1p" and her other conditions are properly controlled with treatment and/or do not cause more than minimal limitations in her ability to perform work activities. *See* AR at 18 (citations omitted).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except [she] is able to lift twenty pounds occasionally, lift and carry ten pounds frequently and push and pull the same. [She] is able to walk and stand six hours per eight-hour workday and sit for six hours per eight-hour workday with normally scheduled breaks. [She] is able to occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. [She] is able to occasionally balance, stoop, crouch, kneel and crawl, but must avoid more than occasional exposure to unprotected heights.

AR at 20. The VE testified, and the ALJ determined, that Plaintiff is capable of performing her PRW as an assistant manager, retail sales and manager, retail sales. AR at 23-24. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 29, 2016, through the date of [the ALJ's] decision." AR at 24 (citing 20 C.F.R. § 404.1520(f)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency

4

in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

In *Winfrey v. Chater*, the Tenth Circuit described Step Four of the sequential evaluation process as occurring in three distinct phases. *See* 92 F.3d 1017, 1023 (10th Cir. 1996).

> In phase one, the ALJ evaluates a claimant's physical and mental [RFC]. In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant

5

work.

*Baca v. Saul*, No. CV 20-225 WJ/GJF, 2021 WL 1390776, at *3 n.7 (D.N.M. Apr. 13, 2021), *R&R adopted*, 2021 WL 1753947 (D.N.M. May 4, 2021) (citing *Winfrey*, 92 F.3d at 1023). Plaintiff couches her motion in terms of *Winfrey*. *See Doc. 24*. She contends that: (1) the ALJ failed to properly consider the combined effect of Plaintiff's impairments and her statements about their intensity; and (2) the ALJ made erroneous findings concerning her PRW. *Doc. 24* at 5-22. The Court finds no reversible error.

### A. The ALJ adequately assessed Plaintiff's RFC.

Plaintiff contends that the ALJ failed to consider or incorporate her non-severe limitations in the RFC and inadequately assessed her subjective symptoms. *Doc. 24* at 5-11. The Court will consider each of these arguments in turn.

Plaintiff begins by arguing that the ALJ failed to discuss any of her non-severe impairments in the RFC. *Id.* at 6. She presents a laundry list of evidence to show that her impairments caused limitations greater than those the ALJ assessed.[3] *Id.* at 6-8. She particularly points to limitations attributable to the non-severe impairment of plantar fasciitis in combination with her other impairments and its effect on her abilities to stand or walk for prolonged periods of time. *Id.* at 8.

The ALJ found Plaintiff's plantar fasciitis to be a non-severe impairment because it was properly treated. AR at 18 (citing, *e.g.*, AR at 382, 406-07, 417, 491, 569). The

---

[3] Plaintiff mentions that the record contains medical evidence showing that she began taking escitalopram for a "severe episode of major depressive disorder" in a period that post-dated the initial and reconsideration decisions. *Doc. 24* at 8 (citing AR at 99-124, 622). She does not, however, develop any argument to show that the ALJ committed reversible error in his consideration of this record or any related diagnosis. *See id.*; *Doc. 28*.

6

ALJ noted Plaintiff's testimony that she has difficulties standing and walking and relies on her husband and grandchildren to help with daily activities. AR at 21. The ALJ's summary of the medical evidence was brief, but not so meager that it was inadequate. In finding that her plantar fasciitis is non-severe, the ALJ referenced medical records that established Plaintiff experienced pain in both her plantar fasciae but did not have synovitis, that she was prescribed conservative measures for treatment (ibuprofen 600mg and exercises such as rolling a frozen bottle of water on her heels and gentle massage), and that she reported pain with weight bearing. AR at 18 (citing AR at 382, 406-07, 417, 491). He noted that medical evidence sometimes revealed a normal gait and other times showed that Plaintiff walked slowly on her heels and had limited balance. AR at 21 (citing, *e.g.*, AR at 494, 558, 574, 622, 661, 665, 675), AR at 22. One of the 2018 records ALJ Weiss referenced notes that her plantar fasciitis had "resolved." AR at 21 (citing AR at 569). He also referenced records that recorded her problems standing and walking. *See, e.g.*, AR at 21 (citing AR at 665).

In analyzing the medical opinions, the ALJ noted that the state agency consultants "failed to properly limit [Plaintiff] to no work around hazards, despite evidence of limited balance and decreased sensation in [her] right lower extremity . . . ." AR at 22 (discussing AR at AR at 99-110, 112-24). The ALJ gave some weight to the opinion of Tatyana Guerrero, MD, the physical consultative examiner. AR at 22, 491-98. He found that "Dr. [Guerrero] properly noted [Plaintiff] as able to walk, sit, rise, bend and squat, which are consistent with her examination findings." AR at 22. Dr. Guerrero opined that Plaintiff had "no limitations" in her abilities "to stand, sit, walk, bend or stoop, reach, handle, lift, carry, see, hear or with memory or understanding." AR at 496. ALJ

7

Weiss only gave "some weight" to this opinion, as Dr. Guerrero did not assign *enough* limitations given Plaintiff's treatment records and symptoms. *See* AR at 22. In sum, having thoroughly reviewed the record and the decision, the Court finds that Plaintiff has not demonstrated evidence sufficient to establish that her non-severe impairments, considered together with her severe impairments, result in more severe limitations than those the ALJ determined.

Plaintiff next argues that the ALJ did not adequately consider her statements concerning the limiting effects of her impairments under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 24* at 8. Specifically, she refers to her "alleged symptoms of low back pain, difficulty walking, standing, squatting, bending, kneeling, and using her hands." *Id.* at 11. Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;

8

> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p, 2017 WL 5180304 at *7-8).

Under these guidelines, the ALJ discussed the following:

"Daily activities": ALJ Weiss noted Plaintiff's testimony that her husband and grandchildren help with chores because her back and hip pain limits her abilities to walk, clean, and mop. AR at 21. He also observed that Plaintiff reported to her physical therapist that she is able to walk with her family due to progress made in physical therapy. AR at 23 (citing, *e.g.*, AR at 629).

"Location, duration, frequency, and intensity of pain or other symptoms": The ALJ discussed Plaintiff's testimony regarding her pain: that she cannot work due to back and hip pain and fibromyalgia, which causes burning pain in her arms, upper back, and lower legs three times a week. AR at 21. Plaintiff testified her back pain causes daily pain of seven to eight out of ten despite attempts to remedy it. AR at 21. ALJ Weiss commented that in contrast to this testimony, Plaintiff "more recently reported that her pain was mostly mild in her lower back" and medical records revealed "improvements in strength and range of motion in her lower back" along with her self-reports that she can walk "with her family, further supporting greater functioning than alleged." AR at 23 (citing AR at 580, 629).

9

The ALJ summarized medical records that showed Plaintiff "complained of hip and back pain that radiates to her legs and limits her standing and walking." AR at 21 (citing, *e.g.*, AR at 374, 476-77, 499, 555, 658). "[D]espite these complaints, examinations generally showed an ability to remove socks, sit and rise normally, perform a full squat, bend to touch toes, normal strength, normal reflexes, normal straight leg tests and a normal gait." AR at 21. Other times her providers noted a "decreased range of motion in her lower back, back spasms, lumbar and hip tenderness, slowly walking on heels, limited balance, decreased sensation in right lower extremity and positive straight leg tests." AR at 21 (citations omitted). Plaintiff also complained of neck and shoulder pain and was observed to have "neck tenderness, spasms and decreased range of motion[,]" but at other times had "normal range of motion, normal strength and normal reflexes." AR at 21-22 (citing, *e.g.*, AR at 495, 562, 569, 614, 622). Finally, the ALJ recounted Plaintiff's complaints of hand and wrist pain. AR at 22 (citing, *e.g.*, AR at 492). Some records indicated "normal fine and gross manipulative skills, normal sensation and normal range of motion[,]" while others revealed "less optimal findings, including at times mildly decreased grip strength, hand tenderness and positive Tinel and Phalen tests." AR at 22 (citing, *e.g.*, AR at 377, 495, 562, 622). Finally, while Plaintiff complained of widespread pain due to fibromyalgia and examinations sometimes revealed tender points, "examinations generally showed normal strength, normal range of motion, normal reflexes and a normal gait. AR at 22 (citing, *e.g.*, AR at 374, 378, 382-83, 477, 491, 495, 558, 569, 574-75, 592-93, 611, 614, 661, 665, 675).

<u>"Type, dosage, effectiveness, and side effects of any medication"</u>: The ALJ noted Plaintiff's testimony that her back pain remains at a seven to eight out of ten "despite

her use of pain medications[,]" which include Celecoxib and Gabapentin. AR at 21-22 (citing, *e.g.*, AR at 331). He also observed that Plaintiff's "fibromyalgia was noted as generally well controlled with her use of Gabapentin." AR at 23 (citing, *e.g.*, AR at 563).

<u>"Treatment other than medication" and "Any measures other than treatment an individual uses or has used to relieve pain or other symptoms"</u>: The ALJ discussed Plaintiff's attempt at relief through injections, physical therapy, and home exercise. *See* AR at 21 (citing, *e.g.*, AR at 340-69, 615). He also noted that surgery is "being considered in the future." AR at 21. The ALJ observed that physical therapy resulted in "improvements in strength and range of motion in [Plaintiff's] lower back[,]" which allowed Plaintiff to walk with her family and "tolerate standing . . . with repeated movements . . . ." AR at 23 (citing AR at 580, 629). Finally, treatment notes showed that Plaintiff's hip function improved with injections, "with no medical evidence as to why such injections stopped, beyond the indications of overall improved functioning." AR at 23 (citing AR at 592-93).

Plaintiff argues that the ALJ used boilerplate language to dismiss her alleged symptoms and references treatment records that she believes support her allegations of pain. *Doc. 24* at 8-11. The Court finds, however, that the ALJ adequately evaluated Plaintiff's statements pursuant to SSR 16-3p and summarized the record in light of Plaintiff's statements. The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds that the ALJ's findings regarding

Plaintiff's subjective complaints of her symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Plaintiff's motion is denied on this issue.

### B. The ALJ did not err in making findings related to Plaintiff's PRW.

Plaintiff next argues that ALJ Weiss erred in failing to find that her past work was not "composite work" and by finding that she could return to her PRW as it is generally performed. *Doc. 24* at 11-22.

#### 1. Composite Work

The ALJ determined that Plaintiff "is capable of performing [PRW] as assistant manager, retail sales and manager, retail sales." AR at 23. Plaintiff argues that her past positions as Management Trainee and Manager (Retail Store) were actually "composite jobs," because they entailed duties performed at different exertional levels. *Doc. 24* at 12. The DOT descriptions for her PRW read as follows.

> Performs assigned duties, under direction of experienced personnel, to gain knowledge and experience required for promotion to management positions: Receives training and performs duties in several departments, such as credit, customer relations, accounting, or sales, to become familiar with line and staff functions, operations, management viewpoints, and company policies and practices that affect each phase of business. Observes experienced workers to acquire knowledge of methods, procedures, and standards required for performance of departmental duties. Workers are usually trained in functions and operations of related departments to facilitate subsequent transferability between departments and to provide greater promotional opportunities. May be required to attend company-sponsored training classes.

DOT, Code 189.167-018, Management Trainee (any industry), https://occupationalinfo.org/18/189167018.html (last visited July 2, 2021).

> Manages retail store engaged in selling specific line of merchandise . . . performing following duties personally or supervising employees performing

> duties: Plans and prepares work schedules and assigns employees to specific duties. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Coordinates sales promotion activities and prepares, or directs workers preparing, merchandise displays and advertising copy. Supervises employees engaged in sales work, taking of inventories, reconciling cash with sales receipts, keeping operating records, or preparing daily record of transactions for ACCOUNTANT (profess & kin.) 160.162-018, or performs work of subordinates, as needed. Orders merchandise or prepares requisitions to replenish merchandise on hand. Ensures compliance of employees with established security, sales, and record keeping procedures and practices. May answer customer's complaints or inquiries. May lock and secure store. May interview, hire, and train employees. May be designated according to specific line of merchandise sold, such as women's apparel or furniture; related lines of merchandise, such as camera and photographic supplies, or gifts, novelties, and souvenirs; type of business, such as mail order establishment or auto supply house; or general line of merchandise, such as sporting goods, drugs and sundries, or variety store.

DOT, Code 185.167-046, Manager, Retail Store, https://occupationalinfo. org/18/185167046.html (last visited July 2, 2021).

Composite jobs are jobs that 'have significant elements of two or more occupations, and, as such, have no counterpart' in the [DOT]." *Newberry v. Berryhill*, No. CV 16-192 CG, 2017 WL 3602036, at *9 (D.N.M. Feb. 23, 2017) (quoting SSR 82-61, 1982 WL 31387 *2 (Jan. 1, 1982)). "The Social Security Administration Programs Operations Manual ('POMS') states that if a job can only be accurately described by considering multiple DOT occupations, the job may be a composite job." *Id.* (citing POMS DI 25005.020(B)). Plaintiff asserts that the two relevant jobs are composite because neither of the DOT descriptions contain several duties that she performed. *See Doc. 24* at 18. As an assistant manager, she sometimes stocked items up to 50 lbs. *See* AR at 71-73. As a manager, she would mop or clean restrooms "when necessary" and "sometimes" had to measure trucks by hand. *See* AR at 79-80. The Commissioner

argues that the positions as performed are not composite jobs, because the VE "did not have to identify elements of two or more occupations in order to accurately characterize Plaintiff's [PRW] . . . ." *Doc. 27* at 12. Further, that Plaintiff "described her work as she *actually* performed the jobs[,]" as opposed to how they are *generally* performed, does not transform them into composite jobs. *Id.* at 13 (citing SSR 82-61, 1982 WL 31387, at *2).

The Court agrees with the Commissioner. First, Plaintiff did not describe these duties as comprising a significant portion of her positions. Moreover, while the job descriptions do not specifically delineate the duties Plaintiff mentions, both descriptions may be construed to cover the responsibilities. The Assistant Manager position involves "training and perform[ing] duties in several departments . . . to become familiar with line and staff functions, operations, management viewpoints, and company policies and practices that affect each phase of business." *See* DOT, Code 189.167-018. And the Manager position includes "perform[ing] work of subordinates, as needed." *See* DOT, Code 185.167-046. The Court finds that these descriptions cover occasional stocking, mopping, cleaning restrooms, or measuring trucks. Remand is not warranted on this issue.

Plaintiff next argues that the ALJ erred by relying on the VE's conclusion that Plaintiff could perform her PRW as the positions are generally performed in the national economy, rather than as she actually performed them. *See Doc. 24* at 20-21. This argument largely hinges on her assertion that her past positions were composite jobs. "ALJs should not consider composite jobs 'as generally performed in the national economy.'" *Newberry*, 2017 WL 3602036, at *9 (quoting POMS DI 25005.020(B)). As

14

the Court has found that Plaintiff's past positions were not composite jobs, however, remand is unnecessary on this point.

Moreover, the Court finds no error at this step. The DOT classifies the positions of assistant manager and manager (retail store) as light in exertion. *See* AR at 23. The ALJ considered Plaintiff's testimony regarding how she actually performed her previous positions and found, after considering the VE's testimony, that Plaintiff performed her PRW at medium exertion. *See* AR at 23. The ALJ then found that given her RFC, Plaintiff could perform the positions as they are *generally* performed—not as she performed them previously. *See* AR at 23-24. This was not error. The Regulations provide that an ALJ may use VE expertise as evidence "concerning the physical and mental demands of a claimant's [PRW], either as the claimant actually performed it or as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2). The Court declines to remand on this issue.

### C. The ALJ's decision is supported by substantial evidence.

Finally, Plaintiff contends that due to the ALJ's errors alleged above, the ultimate determination of disability is incorrect as a matter of law. *Doc. 24* at 22-23. As Plaintiff has not shown reversible error, however, this last argument is moot.

### V. Conclusion

Plaintiff fails to show that the ALJ committed any reversible error in considering the effects of her non-severe impairments in combination with her severe impairments or her subjective symptoms. Plaintiff has also not established that the ALJ erred in considering her PRW.

Wherefore,

**IT IS ORDERED** that Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 24*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent